IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CLAY B. SULLIVAN ) | |
| ) | |
| v. ) | No. 3:09-0406 |
| ) | Judge Campbell/Bryant |
| RICKY J. BELL, Warden. ) | |

To:   The Honorable Todd Campbell, Chief Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This matter has been referred to the undersigned for further proceedings under Rule 8(b), Habeas Corpus Rules. (Docket Entry No. 21) After review of the petition, the court directed respondent to file a responsive pleading (Docket Entry No. 6), and respondent subsequently filed his "Answer to Petition for Writ of Habeas Corpus" (Docket Entry No. 10), which in fact seeks dismissal of the petition without an evidentiary hearing, though not denominated as a motion to dismiss. Petitioner has filed a reply to this responsive pleading. (Docket Entry No. 22) Construing respondent's submission as a motion to dismiss, and after review of the petition, the record below (Docket Entry Nos. 1 and 17, attachments), and plaintiff's reply to respondent's answer/motion, the undersigned recommends that, for the reasons given below, the motion to dismiss be GRANTED and the petition be DISMISSED with prejudice.

## II. Statement of the Case

On December 9, 2003, a Davidson County jury found petitioner guilty of facilitation of attempted voluntary manslaughter, attempted second-degree murder, and especially aggravated robbery. (Docket Entry No. 17, Att. 1 at 104) On April 21, 2004, petitioner was sentenced to 22 years imprisonment. Id. at 108. On June 30, 2004, petitioner filed a motion challenging his sentence pursuant to Blakely v. Washington, 542 U.S. 296 (2004), and that sentence was reduced by the trial court from 22 to 20 years. (Docket Entry No. 17, Att. 1 at 120) On direct appeal of this conviction and sentence, the Tennessee Court of Criminal Appeals affirmed the judgment of the trial court, and reinstated the original sentence of 22 years. Id., Att. 5; Docket Entry No. 1-1, at 1-12. Petitioner did not further appeal the judgment in the Tennessee Supreme Court.

On March 9, 2007, petitioner filed a state post-conviction petition. After conducting a hearing on this petition, the Davidson County Criminal Court issued an order denying relief on October 29, 2007. (Docket Entry No. 17, Att. 2 at 69-85) On December 3, 2008, the Tennessee Court of Criminal Appeals affirmed the Davidson County court's denial of post-conviction relief. Id., Att. 9. Petitioner's application for permission to appeal to the Tennessee Supreme Court was denied on April 27, 2009. Id., Att. 11 at 8.

On May 4, 2009, petitioner filed his federal habeas petition in this court. (Docket Entry No. 1) The state acknowledges that the petition was timely filed, and that petitioner has exhausted his state remedies. (Docket Entry No. 17 at 2) Petitioner raises the following four grounds for the claim to habeas corpus relief:

1. The evidence at trial was insufficient to support the conviction of especially aggravated robbery, and the integrity of all convictions was eroded by their reliance

upon the perjurious testimony of co-defendant Bagby.

2. Petitioner received ineffective assistance of trial counsel, and was prejudiced thereby.

3. Petitioner's sentence was unconstitutionally enhanced based on factual findings made by the court rather than the jury.

4. Petitioner's court-appointed, post-conviction counsel was so ineffective that the post-conviction decisions of the state courts are rendered unreliable and void.

(Docket Entry No. 1; Docket Entry No. 22 at 3)

### III. Statement of Facts

The underlying facts are these, found by the Tennessee Court of Criminal Appeals upon petitioner's direct appeal:

> This case involves the arrangement of a sham drug deal intended to result in the robbery and murder of Jeremy Dotson. Richard Bagby, a co-defendant charged in the case, testified that while at a party at the defendant's house on the evening of January 8, 2000, the defendant, Joel Teal, Lindsay Dachel, and Maurice Jackson voiced an interest in obtaining marijuana. Because no one had money to pay for the drugs, Dachel suggested that they call Jeremy Dotson to set up a drug deal and rob him. Dachel informed the group that if the plan was carried out, they would have to kill Dotson because he was a co-worker and would recognize Dachel.
>
> After paging Dotson to set up a meeting with him, Teal, Jackson, and Dachel left armed with two sawed-off shotguns but returned unsuccessful one hour later after Teal recognized one of the individuals with Dotson and was unable to follow through. After "regrouping," Dachel again paged Dotson and set up a second meeting with him at the Waffle House on Bell Road. Thereafter, the defendant retrieved his mother's black nine-millimeter handgun and instructed Jackson to wipe the bullet casings off to remove any fingerprints. The defendant further informed Bagby that if he "pulled it off," he would become a member of their gang, dubbed "G.D."
>
> Between 11:00 and 11:30 p.m., the defendant drove Bagby, Jackson, and

3

Dachel to the arranged site, and the group decided that Jackson would be the gunman. Bagby particularly recalled that the defendant stated that the proceeds from the robbery would go to the gang. When they arrived at the Waffle House, Dachel spoke with Dotson, and they decided to move the deal to Dotson's apartment complex, a more secluded area. After following Dotson to Arbor Ridge Apartments, Jackson and Bagby got out of the vehicle with Bagby carrying a duffle bag full of towels, or "woo," for the purpose of imitating money used for the drug deal. When Dotson realized there were only towels in the bag, Jackson shot him and his passenger, Nathaneal Shearon.$^{FN1}$ Jackson and Bagby took five pounds of marijuana from Dotson's truck, and the defendant drove the group back to his house to divide the drugs.

FN1. The record reflects that Nathaneal Shearon was the victim of facilitation of attempted voluntary manslaughter, while Jeremy Dotson was the victim of attempted second degree murder and especially aggravated robbery.

On cross-examination, Bagby acknowledged that he was indicted in the case and had not yet been tried. He further indicated that he had only known the defendant a few days and that he had been to the defendant's house once before the night of the incident. He stated that there were six or seven people at the defendant's party, including two girls who were not involved in the incident. Bagby stated that he smoked some marijuana and drank several Zimas, a malt liquor beverage, while at the defendant's house. On redirect examination, Bagby testified that the defendant did not go on the first trip to meet Dotson and did not get out of the car to talk to him at Waffle House. On recross-examination, he stated that the car did not belong to the defendant but had been rented by Teal.

Jeremy Dotson testified that Dachel called him on two occasions to set up a purchase of marijuana. He stated that on the first trip, between 8:00 and 9:00 p.m., there was no transaction because Dachel did not trust that he had five pounds of marijuana. Dotson further stated that Shearon accompanied him to the second meeting at Waffle House on Bell Road, where he and Dachel decided that the area was too crowded and opted to move the transaction to his apartment.

Dotson testified that the defendant drove the other three men to the apartment complex, where Jackson and Bagby exited the vehicle and

approached. He stated that Jackson told him he was "dead" and shot him in the left shoulder with a nine-millimeter handgun. Dotson immediately jumped under his truck and "played [ ] dead," watching Jackson and Bagby take five pounds of marijuana, with a street value of between $4200 and $4300. As they left, Dotson ran toward his apartment and saw the defendant driving away. After searching for Shearon in the apartment, Dotson found him outside lying on the ground with two gunshot wounds to the abdomen.

Dotson testified that the shot to his shoulder ricocheted off of the bone and left a two-inch scar. He stated that he was treated at Vanderbilt Hospital; that he had to take pain pills immediately after the shooting; and that he continues to have pain if he "sleep[s] on it wrong." Dotson further noted that his arm was in a sling for some time and that he was unable to work for approximately three weeks. On cross-examination, Dotson testified that this was the only instance in which he has been involved in this type of transaction. He further acknowledged that he was not prosecuted for selling marijuana, and that he only observed the defendant driving the car.

Nathaneal Shearon testified that he went to a party at Dotson's home around 10:00 p.m. after leaving the Tennessee Titans "Music City Miracle" playoff game. At approximately 11:15 p.m., Dotson asked if anyone wanted to go to the Waffle House on Bell Road, and Shearon volunteered because he was hungry and ready to go home. While walking to the truck, Shearon learned that Dotson would be delivering marijuana to Dachel and accompanied him "kind of against [his] better judgment." As the two ordered food at the restaurant, the defendant drove up with Dachel, Jackson, and Bagby as passengers. After speaking with Dachel outside, Dotson came back into the restaurant and told Shearon that they would have to go back to the apartment.

Upon arrival at the complex, Dotson instructed Shearon to get out of the truck with him as Jackson and Bagby approached. After a brief conversation, Jackson told Shearon that he was "a goner" and shot him twice in the abdomen. Shortly thereafter, Dotson, who had also been shot, found Shearon lying on the ground and told him that the police and paramedics had been called.

Shearon testified that he has a twelve-inch scar on his abdomen and that two bullets remain in his body. He indicated that he was able to pick Jackson out of a photo line-up and that he was "pretty sure" that he was shot with a black nine-millimeter handgun. On cross-examination, Shearon testified that he did not participate in the sale in any way. He stated that the parking lot was "pretty well lit" and that he only saw the defendant driving the vehicle. He

5

further acknowledged that he was neither prosecuted nor called to testify on the drug charges.

Officer Michael Sanders testified that he responded to the scene and found Shearon lying on the ground near Building Sixteen with two gunshot wounds to the abdomen. On cross-examination, Officer Sanders testified that there was a second victim at the complex and that he requested medical attention for both victims. Upon a search of the area, he found a small package and several spent shell casings on the ground next to a silver truck. Detective William Stewart, the lead detective in the case, testified that Shearon was able to positively identify Jackson as the shooter from a photo lineup. Detective Joe Williams testified that he found shell casings on the scene and a tan plastic bag taped underneath the passenger side of Dotson's truck. On cross-examination, he acknowledged that he did not examine the contents of the package but speculated that it could have contained marijuana, cocaine, or "a number of things."

James Rottmund, supervisor of forensics and firearms for the Nashville Metro Police Department, was qualified as an expert in the field of firearms identification. He stated that an analysis of the pattern of scratches on the shell casings can determine whether they were fired from the same weapon. He further stated that he examined the seven nine-millimeter casings that were recovered from the scene and determined that all seven were discharged from the same gun. Following the presentation of proof, the defendant was convicted of facilitation of attempted voluntary manslaughter, attempted second degree murder, and especially aggravated robbery.

State v. Sullivan, 2006 WL 644021, at *1-3 (Tenn. Crim. App. Mar. 10, 2006).

### IV. Conclusions of Law

Title 28 U.S.C. § 2254(d) provides the following with respect to granting writs of habeas corpus to prisoners who are in custody pursuant to a state court judgment:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The "unreasonable application" of clearly established federal law differs from an "incorrect application." Williams v. Taylor, 529 U.S. 362, 411 (2000). If clearly established law is incorrectly, but not unreasonably applied, then the writ will not issue. Id. at 411-12. Under the "unreasonable application" clause, "a federal habeas corpus court may grant the writ if the state court identifies the governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The "contrary to" clause is satisfied when a state court "arrives at a conclusion opposite that reached by the Court on a question of law or if the state decides the case differently than the Court has on a set of materially indistinguishable facts." Id. at 412-13. Further, where state courts have made factual determinations regarding issues presented for federal habeas corpus review, such determinations are presumed to be correct, and the petitioner has the burden of rebutting that presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A. Sufficiency of the Evidence

In his reply to the government's responsive pleading (Docket Entry No. 22 at 7), petitioner clarified that his claim of insufficient evidence only pertains to his conviction for especially aggravated robbery. Section 39-13-403(s) of the Tennessee Code provides that a robbery is especially aggravated when it is accomplished with a deadly weapon and the

7

victim suffers serious bodily injury. As pertinent here, serious bodily injury is defined as "bodily injury which involves: (A) A substantial risk of death; (B) Protracted unconsciousness; (C) Extreme physical pain; (D) Protracted or obvious disfigurement; or (E) Protracted loss or substantial impairment of a function of a bodily member, organ, or mental faculty." Tenn. Code Ann. § 39-11-106(a)(34). Petitioner's conviction of especially aggravated robbery was based on the theory of criminal responsibility for the conduct of another, in this case co-defendant Maurice Jackson. See Tenn. Code Ann. § 39-11-402. Petitioner argues that the evidence of serious bodily injury was insufficient for the trial court to reasonably find this element, as follows:

> As to the insufficiency of evidence claim regarding the absence of serious bodily injury to justify especially aggravated robbery, the only medical evidence introduced was the testimony of the victim himself, who was never qualified as a medical expert nor offered any medical records to corroborate his claims of serious bodily injury. When the issue of serious bodily injury arose, the trial court heard arguments from both sides and elected to allow the jury to decide owing to the fact the issue was "too close" for her to call. In the end, the state decided that serious bodily injury was an appropriate sentencing factor to the robbery simply because the victim said he was shot in the upper body, which resulted in hospital treatment, and he had pain and discomfort afterwards. There never was any evidence introduced that either shooting victim of co-defendant Maurice Jackson ever: (1) were at a substantial risk of death, (2) were unconscious for a protracted time, (3) suffered protracted or obvious disfigurement, (4) experienced extreme or intolerable pain or had a loss or substantial impairment of a function of a bodily member, organ or mental faculty for a prolonged period. ... Further, the appellate court [on direct appeal] concluded that any "gunshot would to the upper torso of the body, almost without fail, constitutes a substantial risk of death given the number of vital organs in that region of the body." Such a conclusion [unreasonably] substitutes the lack of medical evidence derived from the trial with the appellate court's perspective on how any gunshot would justify serious bodily injury. ...

(Docket Entry No. 22 at 7-8)

While petitioner aptly attacks the state appellate court's observation that the gunshot wound to the victim's shoulder is within the scope of upper body injuries which might be presumed to present a substantial risk of death, given the proximity of a "number of vital organs," his argument fails because the appellate court went on to find that "the undisputed two-inch scar was sufficient for the jury to find protracted and obvious disfigurement" under Tenn. Code Ann. § 39-11-106(a)(34)(D). State v. Sullivan, 2006 WL 644021, at *8 (citing State v. Mario Merritt, 2004 WL 2726030 (Tenn.Crim.App., at Jackson, Nov. 30, 2004), app. denied (Tenn. Feb. 28, 2005) (holding that a gunshot wound to the shoulder requiring medical treatment, leaving a scar, and continuing to cause intermittent pain was a serious bodily injury)). This construction by the state appellate court of a state statutory provision, consistent with prior holdings of the state court, is an adequate state law ground for finding "serious bodily injury" supporting the especially aggravated robbery conviction, independent of any claimed unreasonable factual determination implicating federal constitutional concerns. Accordingly, habeas relief is not warranted on this claim of insufficiency of the evidence. See Jackson v. Virginia, 443 U.S. 307, 321 (1979). See also Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

B. Ineffective Assistance of Trial Counsel

Petitioner alleges that his trial counsel was ineffective in the following ways: (1) in failing to offer proof to test the state's theory of "serious bodily injury" in defense of the especially aggravated robbery charge; (2) in failing to call Maurice Jackson as a witness;

9

(3) in failing to sufficiently cross-examine the state's witness, Bagby, in order to reveal that Bagby was under indictment for aggravated perjury; and (4) in failing to keep Petitioner informed or meaningfully communicate with him as to the progress of his case.[1]

To prevail on a claim of ineffective assistance of counsel, petitioner must show deficient performance and prejudice to the defendant. See Bell v. Cone, 535 U.S. 685 , 695 (2002). Trial counsel's performance is deficient when it falls below an objective standard of reasonableness. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984); Combs v. Coyle, 205 F.3d 269, 278 (6th Cir. 2000), cert. denied, 531 U.S. 1035 (2000). In determining whether an attorney performed in an objectively unreasonable manner, courts employ "highly deferential" scrutiny. Strickland, 466 U.S. at 689. In assessing performance, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690-91. The prejudice element requires the defendant to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A court hearing an ineffective assistance of counsel claim must consider the totality of the evidence. Id. at 695.

---

[1] In his reply to the government's responsive pleading, petitioner for the first time raises the argument that trial counsel's deficient performance was related to a conflict of interest, allegedly arising from counsel's prior representation of the Metropolitan Nashville Police Department and the Fraternal Order of Police, and the fact that the father of the shooting victim in this case was a member of the police department. (Docket Entry No. 22 at 10) Inasmuch as petitioner did not present this alleged conflict of interest as the basis for an independent habeas claim in his actual petition, the undersigned has not considered it as such here.

10

"[T]he determinative issue is not whether petitioner's counsel was ineffective but whether he was so thoroughly ineffective that defeat was 'snatched from the jaws of victory.'" West v. Seabold, 73 F.3d 81, 84 (6th Cir. 1996) (quoting United States v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992)(en banc), cert. denied, 508 U.S. 975 (1993)).

   As to the latter two grounds for ineffective assistance recited above -- that counsel failed to impeach Bagby with his aggravated perjury charge and that counsel failed to adequately communicate with petitioner -- the government argues that these claims, while technically exhausted, were procedurally defaulted when petitioner failed to pursue them on his post-conviction appeal, as authorized by the state Post-Conviction Procedure Act, Tenn. Code Ann. § 40-30-101 et seq. Citing Coleman v. Thompson, 501 U.S. 722, 752-53 (1991). Indeed, petitioner presented these claims to the post-conviction trial court (Docket Entry No. 1-1 at 25-28),[2] but failed to pursue them in his brief to the Tennessee Court of Criminal Appeals (Docket Entry No. 17, Att. 6 at 10-12). Because state law now bars presentment of these claims to the appellate court, Tenn. Code Ann. §§ 40-30-102, -117, the claims are deemed exhausted but procedurally defaulted, and cannot be the basis for federal habeas relief, absent a showing of cause excusing the default and actual prejudice

---

[2] The post-conviction trial court found that counsel's decision not to raise Bagby's perjury indictment was a matter of trial strategy, based on counsel's testimony that he had already attempted to impeach Bagby with the latter's prior inconsistent testimony, and counsel's reasonable belief that raising the issue would open the door to damaging proof of petitioner's own indictment for perjury (which was severed from the other charges against petitioner (Docket Entry No. 17, Att. 1 at 72)) stemming from the same juvenile transfer hearing that produced Bagby's alleged perjury. (Docket Entry No. 1-1 at 26-27) The post-conviction trial court further found that, even accepting petitioner's allegations of the limited number of meetings he had with counsel, he could not establish that such level of communication was so deficient as to constitute ineffective assistance of counsel. Id. at 27-28.

11

Case 3:09-cv-00406   Document 35   Filed 09/30/10   Page 11 of 18 PageID #: 995

resulting from the alleged constitutional violation, or a showing that failure to consider the defaulted claim will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. While petitioner's reply brief (Docket Entry No. 22) contains numerous references to the failures of his post-conviction attorney as they relate to the investigation and presentment of claims of trial counsel's ineffectiveness, the U.S. Supreme Court has made clear that such circumstances cannot amount to cause excusing the procedural default of constitutional claims now barred from review by the state courts, inasmuch as there is no right to effective assistance of post-conviction counsel, and petitioners for state post-conviction relief must therefore bear the risk of attorney error that results in a procedural default. Coleman, 501 U.S. at 751-57. These claims are therefore barred from federal habeas review.

As to the first two claims of ineffective assistance, in trial counsel's failure to controvert the state's evidence of "serious bodily injury" and his failure to call Maurice Jackson to testify, these claims were exhausted and are not alleged to have been defaulted[3]; however, they are not meritorious. Regarding the issue of "serious bodily injury," trial counsel argued that the state's proof was insufficient to meet the statutory definition in his motion for judgment of acquittal. (Docket Entry No. 17, Att. 1 at 275-79) The trial judge ruled that the issue would be submitted to the jury, denying counsel's motion for judgment of acquittal on this and all counts. Id. at 279. At the post-conviction evidentiary hearing, trial counsel testified that he had considered putting on proof of the lack of seriousness of the

---

[3]The record would appear to support an assertion of procedural default of the claim involving the lack of proof of "serious bodily injury," inasmuch as this claim of ineffective assistance was presented in the post-conviction petition but was not raised before the Tennessee Court of Criminal Appeals (Docket Entry No. 1-1 at 21-23; Docket Entry No. 17, Att. 6 at 10-12) Notwithstanding this apparent default, the claim may be denied on the merits. 28 U.S.C. § 2254(b)(2).

12

victim's injury, and to that end had submitted the victim's medical records to an impartial physician who advised that bodily injury was clear from those records, and that counsel would be ill advised to put such proof before the jury. (Docket Entry No. 1-1 at 22) Even though counsel personally disagreed with this opinion, id., his decision to rely on his legal argument based on the undisputed medical proof and recent decisional law was not found unreasonable by the state courts. Considering this investigation and advocacy for his client's position on the issue, counsel's performance was not so deficient as to amount to ineffective assistance.

With respect to trial counsel's failure to interview or call Maurice Jackson to testify, the post-conviction trial and appellate courts found that the decision was a tactical one based on reasonable trial strategy. (Docket Entry No. 1-1 at 25; Docket Entry No. 17, Att. 9 at 10) This conclusion was based on trial counsel's testimony at the post-conviction hearing that he knew of, and knew that the state possessed, Mr. Jackson's prior statement to police concerning the robbery and shooting, in which Mr. Jackson entirely omitted petitioner's involvement; counsel thus determined that the value of Mr. Jackson's trial testimony would be greatly outweighed by the potential for impeachment this prior inconsistent statement would present. Petitioner has presented no basis for second-guessing the state courts' determination that the failure to call Maurice Jackson was the result of a reasonable trial strategy, nor does the undersigned find any, especially given the "heavy measure of deference" to be applied to counsel's judgments in such strategic matters. Strickland, 466 U.S. at 691. This claim of ineffective assistance of counsel thus has no merit.

13

Case 3:09-cv-00406   Document 35   Filed 09/30/10   Page 13 of 18 PageID #: 997

C.  Sentence Enhancement

Upon petitioner's direct appeal from his conviction and sentence, the Tennessee Court of Criminal Appeals issued a decision containing the following discussion of sentencing issues:

> In a supplemental motion to the [petitioner's] motion for new trial, the [petitioner] challenged the twenty-two year sentence imposed on Count Three (especially aggravated robbery) based upon the Supreme Court's holding in <u>Blakely v. Washington</u>, 542 U.S. 296, 124 S.Ct. 2531 (2004).  In response, the trial court withdrew application of enhancement factors (3) and (7), but factors (2), the [petitioner's] prior convictions, and (10), the use of a firearm, remained intact.  As a result, the sentence in Count Three was reduced from twenty-two years to the presumptive minimum of twenty years. ... [B]ecause our supreme court has held that <u>Blakely</u> does not impact our sentencing scheme, we reinstate the [petitioner's] original sentence of twenty-two years for especially aggravated robbery.

(Docket Entry No. 1-1 at 11-12)  Petitioner challenges this ruling and the original sentence in his habeas petition and his brief in reply to the government's response.  However, it appears that the sentencing issue was procedurally defaulted when it was not raised in the amended state post-conviction petition (Docket Entry No. 17, Att. 2 at 44-52) or the post-conviction appellate brief (<u>id.</u> at Att. 6).  While petitioner raised issues with respect to poor communication with his appointed post-conviction attorney, and informed the post-conviction trial court that he did not intend to waive the sentencing issue (<u>id.</u>, Att. 2 at 65), the court thereafter held an evidentiary hearing at which no argument on sentencing was presented.  Neither the trial nor appellate courts on post-conviction review addressed the issue of petitioner's sentence enhancements.  Accordingly, the issue was waived, and no cause has been shown excusing this procedural default.

14

Alternatively, the undersigned finds that the sentencing claim, if not procedurally defaulted, is without merit. The rule of Apprendi v. New Jersey, 530 U.S. 466 (2000), and its progeny is that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. In reply to the government's position that the fact of petitioner's admitted prior convictions was properly found by the trial judge and alone supported the two-year enhancement of his sentence, petitioner argues that these prior convictions -- for simple possession of a controlled substance, possession of drug paraphernalia, and reckless driving -- could not be deemed subject to the Apprendi exception because these prior convictions were "minor misdemeanor convictions that resulted in nothing more than a statutory fine," whereas both Apprendi and the Tennessee Criminal Sentencing Reform Act of 1989, Tenn. Code Ann. § 40-35-101 et seq., contemplate that the only convictions excepted from proof to a jury beyond a reasonable doubt are felony convictions. (Docket Entry No. 22 at 18-20)

However, the undersigned finds no support for this argument. The provisions of the Tennessee Code cited by petitioner reference "felony convictions" for purposes of defining specific classifications ("multiple offender," "persistent offender," and the like) and sentence ranges, but do not purport to limit consideration of an offender's criminal history for purposes of sentence enhancement to only felony convictions. The courts of Tennessee have long held that misdemeanor offenses may be considered to establish the "previous history of criminal convictions or criminal behavior" which justify enhancing the criminal defendant's sentence under Tenn. Code Ann. § 40-35-114. E.g., State v. Porter, 2005 WL

15

2860255, at *3 (Tenn. Crim. App. Oct. 31, 2005) ("Misdemeanor convictions alone may support application of enhancement factor (2).") (citing State v. Ramsey, 903 S.W.2d 709, 714 (Tenn. Crim. App. 1995)). Federal courts have similarly recognized that the Apprendi exception for prior convictions is not limited to felony convictions, nor to convictions obtained after the criminal defendant reached adulthood. U.S. v. Crowell, 493 F.3d 744, 749-51 (6th Cir. 2007); Koole v. Ryan, 2010 WL 2671500, at *2-3 (D. Ariz. July 2, 2010); Jimenez v. Milyard, 2006 WL 3833889, at *3 (D. Colo. Dec. 28, 2006); Beavers v. U.S., 2005 WL 1865368 (S.D. Ohio Aug. 5, 2005). Thus, the state court's finding of petitioner's prior convictions as a factor justifying a two-year sentence enhancement cannot be said to be an unreasonable application of clearly established federal law; accordingly, this claim to habeas relief should be dismissed.

### D. Ineffective Assistance of Post-Conviction Counsel

As referenced supra, at 12, there is no right to effective assistance of counsel during collateral, post-conviction proceedings. Coleman, 501 U.S. at 751-57. Accordingly, "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). Petitioner argues that his court-appointed post-conviction counsel was so incompetent as to have deprived him of due process. Specifically, petitioner claims that "[i]nevitably, the question before this Court involving this claim is how can a determination be made that Petitioner received a full and fair opportunity to present his claims of trial defense counsel's ineffective assistance of counsel at a subsequent post-conviction hearing when he never had a meaningful opportunity to be heard due to a

16

Case 3:09-cv-00406 Document 35 Filed 09/30/10 Page 16 of 18 PageID #: 1000

complete breakdown of due process of law under state constitutional protections, the Tennessee Post-Conviction Act and the purported fundamental fairness of Tennessee's criminal justice system[?]" (Docket Entry No. 22 at 20) This query is indistinguishable from the issue of whether post-conviction counsel's ineffectiveness may constitute cause excusing the procedural default of an otherwise viable ineffective assistance claim, an issue which <u>Coleman</u> laid to rest.

In sum, the undersigned concludes that the Petition for Writ of Habeas Corpus fails to state a viable claim, and is subject to dismissal.

## V. Recommendation

In light of the foregoing, the Magistrate Judge recommends that respondent's motion to dismiss be GRANTED and the petition be DISMISSED with prejudice.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Cowherd v. Million</u>, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

17

Case 3:09-cv-00406   Document 35   Filed 09/30/10   Page 17 of 18 PageID #: 1001

**ENTERED** this 30th day of September, 2010.

                                                s/ John S. Bryant  
                                                JOHN S. BRYANT  
                                                UNITED STATES MAGISTRATE JUDGE